UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS
FILED
IN CLERKS OFFICE

GERALDO A. MEDERO-GONZALEZ
    PETITIONER PRO SE,

        Vs.

U.S. DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION and CUSTOMS ENFORCEMENT.
AGENCY and AGENTS.

2005 MAR 30  P 12: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Case #

**05-1062**

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2241

Petitioner, Geraldo A. Medero-Gonzalez, hereby petition this Court for a Writ of Habeas Corpus to remedy his unlawful detention, and to enjoin his continued unlawful detention by the Respondent and its agents. In Support of this petition and complain for injunctive relief, petitioner alleges as follows:

"PARTIES"

1.) Petitioner is a Native and Citizen of Cuba who arrived in the United States at Key West on May 27, 1980 as an unaccompanied Minor Cuban refugee child during the Mariel boatlift. Petitioner was paroled pursuant to Section 212(d)(5) of the immigration and Nationality Act of 1980, 8 U.S.C 1182(d)(5) into the United States and to the Custody of the Pennsylvania Children and Youth Services. Petitioner was Ordered deported on June 10, 2002, and was taken

(1)

into Custody by Immigration on July 19, 2004 After completing his Prison Sentence. He has been Detained by Immigration and Customs Enforcement (ICE) For over 8 Months Today.

2.) Respondent Alberto Gonzales is the United States Attorney General Responsible for the Administration of ICE and the implementation and enforcement of the Immigration Laws. As Such, he is the Ultimate Legal Authority / Custodian of the Petitioner.

3.) Respondent Bruce Chadbourne is the Interim Field Office Director For Detention and Removal, Boston Field Office, Immigration and Customs Enforcement, Department of Homeland Security. As Such, he is the Local ICE Official who has immediate Custody of the Petitioner.

4.) Respondent Department of Homeland Security is the Agency Charged with implementing and enforcing the Immigration Laws.

5.) Respondent Joseph McDonald is the Sheriff For the Plymouth County Correctional Facility in Plymouth, Massachusetts. Because ICE Contracts with Said Facility to house Immigration Detainees Such as Petitioner, he has immediate Custody of the Petitioner.

<u>Custody</u>

6) Petitioner is detained at the Plymouth County Correctional Facility in Plymouth, Massachussetts. ICE Contracted Said Facility to house Immigration Detainees Such as Petitioner. Petitioner was Previously detained at Concord State Prison in Concord, New Hampshire, which also Contracted with ICE to detain, or house Immigration Detainees. Petitioner is under the direct Control of Respondents and their agents.

## "Jurisdiction"

7) This Action Rises under the Constitution of the United States, The Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 et seq., as amended by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has Jurisdiction under 28 U.S.C. 2241, art. I §9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. 1331, as petitioner is presently in Custody under Color of the Authority of the United States, and Such Custody is in Violation of the Constitution, Laws, or Treaties of the United States. See: CLARK v. MARTINEZ, 125 S. Ct. 716. (2005) and ZADVYDAS v. DAVIS, 121 S. Ct. 2491, (2001).

"Venue"

8.) Venue lies in the District of Massachusetts because the Petitioner is currently continued being detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts despite his pleadings for Conditional Release as mandated by the Supreme Court under the Martinez's Ruling. Venue in this District is also proper because the Petitioner is in the Custody of both Joseph McDonald, Sheriff of the Plymouth County Correctional Facility in Plymouth, Massachusetts where Petitioner is being detain, and Respondent Bruce Chadbourne, Interim Field Office Director of this District, which Encompasses the Plymouth County Correctional Facility where the Petitioner is detained. 28 U.S.C. 1391

"Exhaustion of Remedies"

9.) Petitioner has exhausted Administrative Remedies to the extent required by Law, and his only Remedy is by way of this Judicial Action. After the Supreme Court decision in Zadvydas, the Department of Justice issued Regulations governing the Custody of Aliens Ordered Removed. See: 8 C.F.R. 241.4.

Said Regulations where not applicable to "Mariel Cubans. After the Supreme Court decision in Martinez, the Government Repeal/cancel the only Existing Regulation governing the Parole of

Mariel Cuban Parolees held in Custody detention.
Petitioner was ordered deported since June 10, 2002, and was taken into ICE custody on July 19, 2004. No 90-days review was provided despite Petitioner's request, and ICE decided to continue his detention.

10) On October 13, 2004, the Petitioner filed for a petition for writ of habeas corpus pro se in the District of New Hampshire where he was being detained at the time. The District Court, in its Report and Recommendation dismissed all except Petitioner's claim alleging unconstitutional detention without foreseeable removal after finding that Petitioner has been held in detention for over 6 months. The Magistrate Judge gave both the Petitioner and the Respondent 10-days to appeal his decision and findings, and in an order issued simultaneously order the Respondent to respond and show cause pursuant to 28 U.S.C. 2243. The Court specifically order the Respondent to answer specific questions. See: Attach order. The Respondent waived his right to challenge the Magistrate's decision in his report and recommendation when he failed to file an appeal within the 10-day requirement specified by the Court, and while Respondent did filed a response, see attachment, he failed to answer the Court specific questions. The

Petitioner filed his Response and Objection as well as a Motion to Expedite Ruling. However, the Court continues to delay by asking the Respondent to now provide the Court with information that in fact the Court has already, as it was provided by the Petitioner as part of the Habeas Petition, See: Report and Recommendation at 10, and by the Respondent in part of his own Response. More than 5 months have passed since Petitioner's pro se Motion/Petition was filed and yet despite the Supreme Court Ruling in Martinez 125 S. Ct. 716, (Jan. 2005) Petitioner Remains detained without any indication from the government that he will be conditionally Release and when. A new Habeas Petition is proper in light of these new facts, and on the facts that the Petitioner is now held in Custody in the District of this Court and this Court is familia with the Relevant and Governing Case Law as this Court has already Ruled in Similar Matters. See: Eloy Canizares v. John Ashcroft, C.A. No. 03-1574-NG, decided on January 21, 2005.

ii-) No Statutory Exhaustion Requirement Apply to Petitioner's Claim of Unlawful detention.

= "Statement of Facts"

A. Background

12.) Petitioner, Geraldo A. Medero Gonzalez is a native and citizen of Cuba. On May 27, 1980 during the Mariel boatlift, the Petitioner entered the United States via Miami, Florida as an unaccompanied Cuban Refugee child. Petitioner was paroled into the custody of the Pennsylvania Children and Youth Services, and has lived here ever since.

13) On or about December 1996 the Petitioner was convicted of two drug offenses in the State of New Hampshire and sentenced to serve time at the Concord, New Hampshire State Prison. Subsequently, ICE Ordered him Removed via an immigration Judge because of his inadmissibility due to his drug convictions. The Order of Removal became final on June 10, 2002. He did not Appeal the decision of the IJ.

14.) ICE took the Petitioner into custody on July 19, 2004 after the Petitioner completed his State Prison Sentence. The Petitioner has now been held in detention for over 8 months.

B. "90-days and Six Months Custody Review"

(7)

15.) No 90-days Custody Review was issued to the Petitioner Knowledge despite Petitioner's Request. As a Result, the Petitioner was Continued in Custody.

16.) Petitioner Re-Alleges and incorporate by Reference paragraph # 10 above.

17.) Ice have not made Petitioner aware of any decision with regard his Conditionn Release pursuant to Martinez Mandates despite Petitioner's Custody over 8 months today, and despite the facts that all Mariel Cuban Detainees including one who came with the Petitioner from the same Concord, New Hampshire State Prison Facility and who came into Ice Custody detention 4 Months after the Petitioner, have this day been all Released under Conditional Immigration Parole Except this Petitioner.

18.) To the Petitioner's Knowledge, Cuba and the United States have no Diplomatic Relations. Cuba will not issue Travel documents for this Petitioner, or any Mariel Cuban Refugees. In Fact, Ice has Conceded in Martinez that ti no longer is involved in any Repatriation Negotiations with Cuba.

19.) ICE has offered no evidence to suggest that repatriation of this particular petitioner is reasonably foreseeable now.

20.) Based on the Government's own admission in _Martinez_ removal of this petitioner to Cuba is not reasonably foreseeable.

"Legal Framework for Relief Sought"

21.) Freedom from imprisonment is a central right protected by the Due Process Clause. _Zadvydas_, 533 U.S. at 690. After a reasonable period of post-removal order detention, if removal is not foreseeable, continued detention is not authorized by any constitutionally valid statute. See: _Martinez_, 125 S. Ct. at 723; and _Zadvydas_ at 699.

22.) The _Zadvydas_ Court determined, and the _Martinez_ Court agreed, that the Government can detain an alien for only the period of time reasonably necessary to effect removal. _Zadvydas_, 533 U.S at 699-701; _Martinez_ 125 S. Ct 716 (2005).

23.) The decision in both _Zadvydas_ and _Martinez_ determined that six month is a presumptively reasonable post-removal order period during which the

Government could detain an alien while it seeks to have the alien Removed, and that any alien held beyond that time without being Removed, or beyond the time when Removal does not appear to be foreseeable, must be Released from Custody. Id.

24) In *Martinez*, the Court Explicitly found that a Mariel Cuban habeas petitioner was held beyond the passage of six months despite the government's failure to produce any Evidence that petitioner's Removal to Cuba was likely. The government Conceded that it was no longer involved in Repatriation negotiations with Cuba. Accordingly, the Court held the petitioner's Removal was not Reasonably foreseeable and granted petitioner's Habeas Relief.

25) In a Similar Matter before this Court, after the Supreme Court decision in *Martinez* and a Motion to Expedite Ruling by the petitioner, this Court, Judge Nancy Gertner, issued an Order for the immediate Release of the detainee pursuant to the United States Supreme Court decision in *Clark v. Martinez*, 125 S. Ct. 716 (2005) See: *Eloy Canizares v. Ashcroft*, C.A. No. 03-11574-NG, Order issued January 21, 2005.

" Claim For Relief "

" Count One "
Statutory Violation

26) Petitioner Re-Alleges and incorporates by Reference Paragraphs #1 Through #25 Above.

27-) Petitioner's Continued detention by The Respondents violate INA § 241(a)(6), as interpreted in Zadvydas. Petitioner's Six Months presumptively Reasonable Period For Continued Removal Efforts passed 2 Months + plus a 90. For The Reasons Continued Above in Paragraphs #1 Through 25, The petitioner's Removal To Cuba is Not Reasonably Foreseeable. The Supreme Court held in both Zadvydas And Martinez That The Continued detention of Someone After Six Months Where Removal Is Not Reasonably Foreseeable is Unreasonable and in Violation of 8 U.S.C. 1231(a)(6)

" Count Two "
" Substantive Due Process Violation "

28-) Petitioner Re-Alleges and incorporates by Reference Paragraphs #1 Through 27 Above.

29-) The Petitioner's Continued detention Violates his Right To Substantive due Process by depriving him

of his Core Liberty interest to be ~~free~~ from bodily restrain.
The Due Process Clause requires that the deprivation
of petitioner's Liberty be narrowly tailored to serve a
Compelling government interest. While the respondents
would have a compelling government interest in
detaining petitioner in order to effect his Removal,
that interest does not exist if Petitioner, a Mariel
Cuban Native Refugee, cannot be deported. See:
Zadvydas.

## "Coun Three"
### Procedural Due Process Violation.

30) Under the Due Process Clause of the United
States Constitution, an Alien is Entitled to a Timely
and Meaningful Opportunity to demonstrate that he
Should not be detain. The petitioner in this Case has
been denied that Opportunity as there is no Administrative
Mechanism in Place for the Petitioner to demand a
decision, Ensure that a decision will Ever be Made, or
Appeal a Custody decision that Violates Zadvydas and
Martinez.

## "Conclusion"

Under the "Immediate Custodian" Rule, This
Court have Jurisdiction Now To Entertain the

PRESENT WRIT OF HABEAS CORPUS AND GRANT THE RELIEF REQUESTED BECAUSE THE PETITIONER IS NOW BEING UNLAWFULLY AND UNCONSTITUTIONALLY DETAIN AT THE Plymouth County CORRECTIONAL Facility in Plymouth, Massachusetts. This Court HAVE Jurisdiction OVER THE Sheriff OF SAID Facility, Respondent Joseph McDonald AND Bruce Chadbourne, INTERIM Field Office DIRECTOR FOR DETENTION AND REMOVAL, BOSTEN Field OFFICE, IMMIGRATION AND CUSTOMS Enforcement, ICE Local OFFICIAL, who both HAVE IMMEDIATE Custody OF THE PETITIONER. SEE: 28 U.S.C. 2241(a); Rumsfeld V. Padilla 542 U.S. ..., ---, 124 S. Ct. 2711 - 2721 (2004); AND Braden V. 30th Judicial Cir. OF Ky., 93 S. Ct. 1123 1129 (1973) ("A WRIT OF HABEAS CORPUS does NOT ACT upon THE Prisoner who Seeks Relief, but upon THE Person who holds him in Custody").

THE PETITIONER is being held UNLAWFULLY AND UNCONSTITUTIONALLY AS THERE IS NO LEGAL CONSTITUTIONAL STATUTE AUTHORIZING his CONTINUED DETENTION, AND THE PETITIONER hAS A CONSTITUTIONAL SUBSTANTIVE AND DUE PROCESS RIGHT TO BE FREE FROM IMPRISONMENT. SEE: MARTINEZ AND Zadvydas.

This COURT PREVIOUSLY HAVE RULED IN A SIMILAR MATTER, AS SUCH, IT HAVE KNOWLEDGE OF THE MATTERS NOW BEFORE THE COURT AND THE CONTROLLING / GOVERNING LAWS. SEE: CANIZALES V. ASHCROFT, C.A. No. 03-11574-NG.

(13)

Wherefore, Petitioner prays this Court grant the following relief:

1) Assume Jurisdiction over this Matter;

2) Grant Petitioner's writ of habeas Corpus directing the Respondents to Immediately Release the Petitioner from Custody as Removal to Cuba is not Reasonably Foreseeable and Petitioner have been in Custody since July 19, 2004, More Than 8 Months Today.

3) Order Respondents from, or to Refrain from transferring the Petitioner out of the Jurisdiction of ICE Boston District Director during the pendency of these proceedings and while petitioner remains in Respondents' Custody; and

4) Grant any other Relief which this Court deems Just and Proper.

Respectfully Submitted

Gerald A. Medero - Gonzalez
P.C.C.F #39051, 26 Long Pond Rd.
Plymouth, MA, 02360

Date: 3-28-05

14

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

File:   A24 791 345

In the Matter of                                )
                                                )
Geraldo Alberto *S-MEDERO-GONZALEZ,             )      IN REMOVAL
                                                )      PROCEEDINGS
                                                )
Respondent                                      )

CHARGES:   Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("the Act")
           [8 U.S.C. § 1182(a)(7)(A)(i)(I)] - Not in Possession of a Valid Entry Document

           Section 212(a)(2)(A)(i)(II) of the Act
           [8 U.S.C. § 1182(a)(2)(A)(i)(II)] - Convicted of a Controlled Substance Violation

           Section 212(a)(2)(C) of the Act
           [8 U.S.C. § 1182(a)(2)(A)(i)(II)] - Immigration Officer Knows or Has Reason to
           Believe that Alien is an Illicit Trafficker in Any Controlled Substance or is or Has
           Been a Knowing Assister, Abettor, Conspirator, or Colluder with Others in the
           Illicit Trafficking in Any Such Controlled Substance.


APPLICATION:     Motion to Reconsider


ON BEHALF OF RESPONDENT:                ON BEHALF OF SERVICE:
Pro Se                                  Assistant District Counsel
                                        Trial Attorney Unit - INS
                                        JFK Federal Bldg., Rm. 425
                                        Boston, Massachusetts 02203


## DECISION OF THE IMMIGRATION JUDGE

On April 26, 2000, the Immigration and Naturalization Service ("the Service") served Respondent with a Notice to Appear ("NTA") by certified mail, return receipt requested. See Exhibit 1. In the NTA, the Service alleged that Respondent, a native and citizen of Cuba, was paroled into the United States at or near Miami, Florida on or about May 27, 1980. See id. The Service further alleged that at the time of his application for admission to the United States,

Respondent was not in possession of a valid entry document. See id. In addition, the Service alleged that on December 11, 1996, Respondent was convicted in the Hillsborough County Superior Court-South at Nashua, New Hampshire for the offense of Possession of a Controlled Drug with Intent to Sell (to wit: marijuana), in violation of N.H. Rev. Stat. Ann. § 318-B:2 (1995). See id. Accordingly, the Service charged him with being removable pursuant to §§ 212(a)(2)(C), 212(a)(7)(A)(i)(I), and 212(a)(2)(A)(i)(II) of the Act. See id.

The Court scheduled a Master Calendar hearing for May 23, 2000 and sent notice of the hearing to Respondent on May 5, 2000. See Exhibit 2. At the hearing which was conducted via televideo conferencing, Respondent admitted factual allegations #1-4 contained in the NTA, denied factual allegations #5-6, and denied all charges of removability. As proof of Respondent's removability, the Service submitted certified copies of Respondent's criminal indictments and dispositions from the Hillsborough County Superior Court. See Exhibits 4 & 5. The Service also submitted a certified copy of New Hampshire Supreme Court's decision, State of New Hampshire v. Geraldo Gonzalez, Nos. 97-319 & 97-717, (N.H. 1999), denying Respondent's motion to reconsider his convictions for possession of marijuana with intent to sell (N.H. Rev. Stat. Ann. § 318-B:2 (1995)) and conspiracy to possess marijuana with intent to sell (N.H. Rev. Stat. Ann. § 629:3(1996)). See Exhibit 5. Based on the evidence presented by the Service, the Court sustained the charges of removability. Respondent then requested an opportunity to apply for relief under NACARA or, alternatively, asylum, withholding of removal, or withholding/deferral of removal under the Convention Against Torture ("CAT"). The Court explained to Respondent that his drug convictions (aggravated felonies and particularly serious crimes) made him ineligible for asylum, withholding of removal, and withholding of removal under CAT. In addition, the Court held that Respondent was ineligible for NACARA because his drug convictions were not waivable offenses under INA § 212(h). Therefore, the Court held that Respondent was only eligible to apply for deferral of removal pursuant to CAT. The Court informed Respondent that his application for deferral was due on June 30, 2000 and reset his case for a hearing on the merits of his application for July 17, 2000. See Exhibit 6.

Respondent's case was subsequently continued until August 21, 2000. See Exhibit 7. During the televideo hearing, the Court again explained to Respondent that his convictions barred various forms of relief including adjustment of status, asylum, and withholding of removal. The Court also asked Respondent why he failed to file his application for deferral of removal under CAT. Respondent indicated that he was under the impression that he had to pay to file the application and that he did not have the funds to do so. The Court informed Respondent that he did not have to pay a filing fee for the application and reset the case until October 16, 2000 in order to give Respondent time to submit his application. See Exhibit 8.

On September 21, 2000, Respondent submitted his application for deferral of removal (Form I-589) with an attachment which listed all of Respondent's criminal convictions in the United States. See Exhibit 9. On October 16, 2000, the Court and Respondent engaged in an extensive discussion of his eligibility for asylum and withholding of removal. At the conclusion of the hearing, the Court ordered the Service to send Respondent copies of the relevant portions of the Code of Federal Regulations which related to asylum, withholding of removal, and withholding/deferral of removal under CAT. The Court reset Respondent's case for a merits

2

hearing on December 11, 2000. Due to technical difficulties with the televideo conferencing equipment, the case was subsequently reset to April 9, 2001.

On December 12, 2001, the Service submitted copies of documents that were mailed to Respondent at the Court's direction. The document packet included the following: a copy of the U.S. Department of State's 1999 Country Reports on Human Rights Practices - Cuba, a copy of the U.S. Department of State's Profile of Asylum Claims & Country Conditions (November 1997), and a copy of federal regulations relating to asylum, withholding of removal, and CAT (8 C.F.R. §§ 208.1-208.20). See Group Exhibit 10. When questioned at the April 9, 2001 hearing, however, Respondent indicated that he never received the documents included in the packet. The Court reset the case for June 4, 2001 to give the Service time to send the documents to Respondent at the detention facility where he was being detained.

On May 21, 2001, the Court rescheduled Respondent's case for August 13, 2001. On August 13, 2001, Respondent acknowledged that he had received the Service's document package and the Court marked the documents into evidence. See Group Exhibit 10. The Court then reset the case for August 21, 2001. On August 20, 2001, the Court rescheduled Respondent's case for December 10, 2001.

On December 10, 2001, Respondent testified via televideo conferencing about his fear of returning to Cuba. During his testimony, Respondent referred to a 1980 application for asylum that he received in response to his Freedom of Information Act request. After examining the record of proceedings, the Court determined that it did not have copy of the document and that the document was in fact missing from Group Exhibit 10. The Court reset the case for April 22, 2002, so that it could obtain a copy of Respondent's old asylum application.

On April 22, 2002, Respondent faxed the Court a copy of June 14, 1980 asylum application. See Exhibit 11. He contended that he had never filled out the application and did not know who had submitted the document to the Service on his behalf. The Court proceeded to question Respondent about his fear of returning to Cuba. After the Court concluded its inquiry, the Service questioned Respondent about his involvement with the Mariel boatlift. When the Service finished its examination of Respondent, the Court found that Respondent had not proven that he would more likely than not be tortured if returned to Cuba. Consequently, the Court denied Respondent's application for deferral of removal and ordered Respondent removed to Cuba.

On May 13, 2002, Respondent filed a motion to reconsider. In his motion, Respondent argued that his proceedings should be reopened because the Court failed in its duty to advise Respondent as to the burden of proof he needed to meet in order to succeed in his application for asylum or withholding of removal. In spite the Court's shortcomings, Respondent maintained that he did in fact provided the Court with adequate proof of the persecution he would face if returned to Cuba. In addition, Respondent asserted that the proceedings were confusing and were in violation of his right to due process of law as defined by the United States Constitution. He concluded by requesting that the Court rescind its April 22, 2002 order of removal and grant his application for asylum, withholding of removal, or deferral of removal under Article 3 of the Convention Against Torture. Alternatively, he asked that the Court reopen his case to hear

additional evidence regarding Respondent's "well founded fear" of persecution in Cuba.

As of the date of this decision, the Service has not filed a response to Respondent's motion to reconsider. Therefore, Respondent's motion will be deemed unopposed. See 8 C.F.R. §3.23(b)(1)(iv) (2002); Local Operating Procedure #3.4.

A motion to reconsider must be filed within thirty days of the date of a final administrative order of removal. INA § 240(c)(5) (2002); 8 C.F.R. § 3.23 (b)(1) (2002). A party may file only one motion to reconsider and one motion to reopen removal proceedings. 8 C.F.R. § 3.23 (b)(1). The motion to reconsider must state the reasons for the motion by specifying the errors of fact or law in the Immigration Judge's prior decision, and must be supported by any pertinent precedent authority. 8 C.F.R. § 3.23(b)(2). A motion to reconsider requests that the original decision be reexamined in light of additional legal arguments, a change of law, or an argument or aspect of the case that was overlooked, while a motion to reopen seeks to reopen proceedings so that new evidence can be presented and a new decision entered on a different factual record, normally after a further evidentiary hearing. See Matter of Cerna, 20 I & N Dec. 399 (BIA 1991), aff'd, 979 F.2d 212 (11th Cir. 1992); see also 8 C.F.R. § 3.23(b)(2).

The Court will deny Respondent's motion to reconsider for several reasons. First, three different Immigration Judges explicitly explained to Respondent that he was ineligible for asylum, withholding of removal, and withholding of removal under CAT. At numerous hearings, these judges instructed Respondent that before the Court could grant Respondent deferral of removal (the only relief available), Respondent had to establish that it was more likely than not that he would be tortured if returned to Cuba. Moreover, the Service provided and Respondent acknowledged receiving copies of the federal regulations relating to asylum, withholding of removal, and withholding/deferral of removal under CAT. See Group Exhibit 10. When the Court conducted a full evidentiary hearing on Respondent's application for relief from removal on April 22, 2002, the Court gave Respondent precise instructions about his burden of proof. However, Respondent failed to meet his burden of proof, and the Court had no choice but to order him removed to Cuba.

In addition, Respondent has not specified any errors of fact or law in the prior decision that would warrant a reconsideration of the decision to deny Respondent's application for relief from removal. Nor has he presented new evidence that previously was unavailable. Finally, the Court notes that Respondent waived his right to appeal the Immigration Judge's decision denying his application for deferral of removal under CAT.

4

Based on the foregoing, the following order shall enter:

ORDER: IT IS ORDERED that Respondent's Motion to Reconsider be, and the same is hereby DENIED.

_l - 10 · 02_
Date

LEONARD I. SHAPIRO
United States Immigration Judge

5

"CERTIFICATE OF SERVICE"

I, Geralde A. Melero-Gonzalez, hereby CERTIFY that a true copy of the documents included herein was served upon Respondents' Counsel by placing a copy in the Mail System at the facility where I am detained To: Frank Crowley, Special Assistant U.S. Attorney, Department of HomeLand Security, P.O. Box 8728, JFK Station, Boston, MA, 02114.

/Respectfully/

G. Gonzalez

Geralde A. Melero-Gonzalez

DATE: 3-28-05

(1)

"Affidavit"

I, GERALDO L. MEDERO-GONZALEZ, hereby declare THAT based on information provided by the IMMIGRATION AGENT here at The Plymouth Facility on or about March 22, 2005, I AM The only Mariel Cuban Ordered Removed LEFT in Custody detention here. THAT All The OTHER Cuban who where held in detention here, including RAUL DOMINGUEZ, A MARIEL Cuban detainee who was INCARCERATED with The Petitioner at The Concord, New Hampshire State Prison, and AFTER completing his Sentence on November 18, 2004, Four Months AFTER The Petitioner, was TRANSFERRED To The Plymouth Facility AT The SAME TIME with This Petitioner, have All been Already Released. For UNKNOWN Reasons, despite all my EFFORTS To obtain Conditional Release, I Remain in Custody.

I AFFIRM, under penalty of perjury, THAT The Foregoing is TRUE And Correct.

Respectfully Submitted

G. Medero

GERALDO L. MEDERO-GONZALEZ

DATE: 3-28-05

①