Geralda A. Meclere-Gonzalez
              Petitioner Pro se

        vs.

U.S. Department of Homeland Security
Immigration & Customs Enforcement
Agencies and Agents

CA 05- 10624 mlw

3-30-05 FILED
CLERKS OFFICE
2005 APR -4 P 3: 5(
U.S. DISTRICT COURT
DISTRICT OF MASS.

        Dear: Clerk of Court

        On or about March 28, 05 I sended in for Filing
a Petition for habeas corpus relief pursuant to 28 U.S.C. 2241.
        I believe I didn't include some of the attachments
stated therein. Please find herein the attachments I
didn't included by accident. Thank you for your
time and consideration on the matter.

                        Respectfully,
                        G Gonzalez

05- 10624-mlw

U.S. DISTRICT COURT
DISTRICT OF MASS OFFICE
FILED

2005 FEB 18  A 11: 4  P 3: 57

U.S. DISTRICT COURT
DISTRICT OF MASS.

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Geraldo Gonzalez[1]


v.                                    Civil No. 04-385-B


United States Department
of Homeland Security


## REPORT AND RECOMMENDATION


Geraldo Gonzalez has filed a *pro se* petition pursuant to 28
U.S.C. § 2241 for a writ of habeas corpus seeking release from
the custody of the United States Department of Homeland Security
("DHS")[2] (document no. 3) and a motion to amend his petition

---

[1] While Petitioner filed this action under the name "Geraldo
Gonzalez," he has advised this Court that his full name is
Geraldo A. Medero-Gonzalez.  Petitioner has notified the Court
that since the time his petition was filed, he has been
transferred to a correctional facility in Massachusetts and that
he is incarcerated there under the name "Geraldo Medero," inmate
number 39051.  The Clerk's office is directed to send all
correspondence to petitioner in Massachusetts as Geraldo Medero
with his inmate number, to minimize administrative confusion or
interruption and delay of correspondence.

[2] Congress recently abolished the Immigration and
Naturalization Service ("INS") as an independent agency within
the Department of Justice, transferring its functions to the
recently established Department of Homeland Security ("DHS").
See Homeland Security Act of 2002, 6 U.S.C. § 291(a) (2002).  The
INS functions relevant to this case now reside in the Bureau of
Citizenship and Immigration Services within the DHS.

(document no. 8) adding a request for a writ of mandamus.   The
petition alleges that Gonzalez is being held in prison pursuant
to a removal order directing his deportation to Cuba, and that
his custody is in violation of his federal statutory and
constitutional rights.   As Gonzalez is currently incarcerated,
the petition is before me for preliminary review to determine
whether Gonzalez has stated any claim upon which relief might be
granted.   <u>See</u> United States District Court for the District of
New Hampshire Local Rule ("LR") 4.3(d)(2).   As explained herein,
I recommend that all of Gonzalez's claims be dismissed, except
for the claim alleging potentially indefinite pre-removal
detention.   In an Order issued simultaneously with this Report
and Recommendation, I will direct the Respondent to file an
answer to the indefinite detention claim.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated
plaintiff commences an action *pro se* and *in forma pauperis*, the
magistrate judge is directed to conduct a preliminary review and
to prepare a report and recommendation determining whether the
complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the
> action is frivolous, malicious, or fails to state

a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune
from such relief under 28 U.S.C. § 1915A(b); or

(ii) it fails to establish subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court

construes *pro se* pleadings liberally.  See <u>Ayala Serrano v.</u>

<u>Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following

<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe *pro se*

pleadings liberally in favor of the *pro se* party).  "The policy

behind affording *pro se* plaintiffs liberal interpretation is that

if they present sufficient facts, the court may intuit the

correct cause of action, even if it was imperfectly pled."  <u>Ahmed</u>

<u>v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>,

<u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions

made by the plaintiff and inferences reasonably drawn therefrom

must be accepted as true.  See <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3

(1st Cir. 1996) (stating the "failure to state a claim" standard

of review and explaining that all "well-pleaded factual

averments," not bald assertions, must be accepted as true).  This

review ensures that *pro se* pleadings are given fair and

3

meaningful consideration.   See Eveland v. Dir. of C.I.A., 843
F.2d 46, 49 (1st Cir. 1988).

Background

When Geraldo Gonzalez filed his petition, he was an inmate
at the New Hampshire State Prison where he had recently finished
serving a sentence for drug-related offenses.  Gonzalez completed
his New Hampshire state sentence on July 18, 2004.  Since that
time, he has been detained pursuant to an Order of the
Immigration Court directing that he be removed to Cuba.

Gonzalez, a native of Cuba, came to the United States on May
27, 1980 as part of the Mariel Boatlift.  Shortly after his
arrival, Gonzalez applied for asylum status as a refugee from the
regime of Fidel Castro.  At that time, Gonzalez was fifteen years
old and was admitted to the United States conditionally as an
unaccompanied minor, pending the processing of his asylum
application.  After he was processed at a refugee camp, Gonzalez
was placed in the custody of Pennsylvania Children and Youth
Services in Harrisburg, Pennsylvania.  Unbeknownst to Gonzalez,
his asylum application was never processed and remained pending
at the time this petition was filed.

4

In December of 1996, Gonzalez was convicted on two counts of felonious possession of marijuana with the intent to sell or distribute which rendered him removable from the United States. The Government sought to have Gonzalez deported as a result of his convictions.  After deportation proceedings held in the Immigration Court, the Immigration Judge ("IJ") issued an Order directing that Gonzalez be removed to Cuba.  Gonzalez unsuccessfully sought relief from or withholding of removal for a variety of reasons, all of which were denied either because his drug conviction made him ineligible for the relief requested or because the IJ found that he failed to make an adequate showing that removal should be withheld based on the Convention Against Torture.  The IJ's removal order was affirmed by the Board of Immigration Appeals ("BIA") and became final on June 10, 2002. Gonzalez has been detained pursuant to that removal order for more than six months.

Gonzalez now seeks relief from his predeportation detention asserting that his detention is illegal for the following reasons:

1)    The INS failure to process petitioner's 1980 application for asylum violated his Fifth Amendment due process

5

rights and his federal statutory rights as well as rights that
accrue to him under the Protocol Relating to the Status of
Refugees ("PRSR") treaty;

2)    The ex post facto application of laws not in existence
in 1980 to petitioner's 1980 asylum application in petitioner's
case by the Immigration Judge violated his federal constitutional
rights;

3)    The Immigration Court's order of removal violates
Petitioner's due process rights under federal statutes as well as
the Fifth Amendment of the United States Constitution as well as
his rights under the PRSR;

4)    The petitioner cannot be removed to Cuba because of his
status as a Mariel Boatlift refugee, and therefore his continued
and potentially indefinite detention violates his federal
constitutional rights;

5)    The Immigration Judge relied on federal statutes that
are inappropriately applied to refugees such as Gonzalez in
violation of his federal statutory rights;

6)    Gonzalez's continued detention violates his Eighth
Amendment right not to be subjected to cruel and unusual
punishment.

7)    The IJ incorrectly interpreted the applicable statutes and found that Gonzales was precluded from claiming asylum as a basis for withholding removal as a result of his conviction, because had his initial asylum petition been processed, it would have been granted and he would have refugee status, which would have entitled him to withholding of removal despite his conviction;

8)    The DHS should be estopped from denying him rights and privileges that he would have been entitled to had his initial asylum petition been appropriately processed;

9)    Petitioner should be granted a writ of mandamus requiring the Government to process his asylum application *nunc pro tunc* and accord him all of the rights that would have accrued to him had his application been processed in a timely fashion;

10)   The documents purporting to provide Gonzalez with notice of the charges against him that render him removable were both inaccurate and legally insufficient to accord him the due process protections to which the Fifth Amendment of the United States Constitution entitled him;

11)   The Immigration Court was without jurisdiction to terminate Gonzalez's refugee status and order his removal, and

7

removal issued to Gonzalez on June 10, 2002, the Immigration Court noted that Gonzalez "waived his right to appeal the Immigration Judge's decision denying his application for deferral or removal under CAT."[3]  This assertion is not controverted in any other document filed by Gonzalez, and there is no indication in the petition that Gonzalez has at any time brought an appeal of any of the proceedings before the IJ to the BIA.  Accordingly, I find that Gonzalez's petition concedes that he has waived his BIA appeals, and that his habeas claims that seek, in any way, review of the IJ's decision should be dismissed.  Accordingly, I recommend that all of the claims excepting claims 4, 6 and 9 as enumerated above be dismissed because this Court lacks jurisdiction over those claims due to Gonzalez's failure to exhaust his administrative remedies.

2.   Claim Seeking a Writ of Mandamus

Under the authority of 28 U.S.C. § 1361, this Court can compel an officer or agency of the United States to perform a

---

[3]I have accepted the final order submitted by Gonzalez as part of the habeas petition.  See Fed. R. Civ. P. 10(c)(requiring that written instruments attached to a pleading be construed as part of the pleading "for all purposes").

duty owed to the petitioner.[4]  The writ of mandamus "is an extraordinary remedy [to be] reserved for extraordinary situations." Cheney v. U.S. Dist. Ct. for Dist. of Columbia, 124 S.Ct. 2576, 2594 (2004).  In order to demonstrate that he is entitled to mandamus, the petitioner must establish that he has a clear right to relief.  Id. at 2594, 2595.

Here, Gonzalez seeks a writ of mandamus directing the DHS to process his 1980 asylum application pursuant to their obligation to make asylum application procedures available to aliens and to process asylum applications within a certain period of time.  See 8 U.S.C. §§ 1158(d)(1) & 1158(d)(5).[5]  However, § 1158(7)

---

[4]28 U.S.C. § 1361 states:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

[5]8 U.S.C. § 1158(d)(1) states that:

The Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a) of this section.  The Attorney general may require applicants to submit fingerprints and a photograph at such time and in such manner to be determined by regulation to the Attorney General.

8 U.S.C. § 1158(d)(5) states that:

The procedure established under paragraph (1)

11

provides that nothing in that statute "shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  Gonzalez has failed to demonstrate the clear entitlement to a relief under § 1158 required before the Court can issue a writ of mandamus because the statute he seeks to have enforced disavows any private remdy for its violation.  See Cheney, 124 S.Ct. at 2595.  Accordingly, I recommend that Gonzalez's request for a writ of mandamus be denied.

3.    Claim Alleging Cruel and Unusual Punishment

    In order to be protected by the Eighth Amendment's prohibition against cruel and unusual punishment, the punishment

---

        shall provide that -

        .  .  .

        (ii) in the absence of exceptional circumstances,
        the initial interview or hearing on the asylum
        application shall commence not later than 45 days
        after the date an application is filed;

        (iii) in the absence of exceptional circumstances,
        final administrative adjudication of the asylum
        application, not including administrative appeal,
        shall be completed within 180 days after the date
        an application is filed;

        .  .  .

12

complained of must be one imposed after a conviction of a crime. See Emmons v. Peet, 950 F.Supp. 15, 18 (D.Me. 1996). Here, Gonzalez concedes that his criminal punishment concluded on July 18, 2004, and that since that time, his detention has not been pursuant to any criminal conviction. Accordingly, Gonzalez cannot state a cognizable claim for an Eighth Amendment violation caused by his administrative detention and I recommend this claim be dismissed.

4.  Claim Alleging Unconstitutional Detention Without Foreseeable Removal

Gonzalez alleges that his detention pursuant to the DHS's removal order is unconstitutional because Cuba will not accept Mariel Cubans, and therefore he will not be deported in the foreseeable future. The Fifth Amendment's Due Process Clause protects an alien subject to a final order of deportation, whether or not that alien has been admitted to or excluded from this country. Clark v. Suarez Martinez, 125 S.Ct. 716, 723 (2005); Zadvydas v. Davis, 533 U.S. 678, 694 (2001) (citing Wong Wing v. United States, 163 U.S. 228, 238 (1896)). Freedom from imprisonment is a central right protected by the Due Process Clause. Zadvydas, 533 U.S. at 690. "[A]n alien's liberty interest is, at the least, strong enough to raise a serious

question as to whether, irrespective of the procedures used, . .
. the Constitution permits detention that is indefinite and
potentially permanent." Id. at 696.  Further, after a reasonable
period of post-removal order detention, if removal is not
foreseeable, continued detention is not authorized by any
constitutionally valid statute.  Suarez Martinez, 125 S.Ct. at
723; Zadvydas, 533 U.S. at 699.  The Zadvydas Court determined,
and the Suarez Martinez Court agreed, that the government can
detain an alien for only the period of time reasonably necessary
to effect removal.  Zadvydas, 533 U.S. at 699-701; Suarez
Martinez, 124 S.Ct. at 727.  The decisions in both Zadvydas and
Suarez Martinez determined that six months is a presumptively
reasonable post-removal order period during which the government
could detain an alien while it seeks to have the alien removed,
and that any alien held beyond that time without being removed,
or beyond the time when removal does not appear to be
foreseeable, must be released from custody.  Id.

In Suarez Martinez, the Court explicitly found that a Mariel
Cuban habeas petitioner was held beyond the passage of six months
despite the Government's failure to produce any evidence that
petitioner's removal to Cuba was likely.  The Government conceded

14

in <u>Suarez Martinez</u> that it was no longer involved in repatriation negotiations with Cuba.  Accordingly, the Court held that the petitioner's removal was not reasonably foreseeable and that the petitioner's habeas petition should have been granted. Hence, although the Court cannot at this time rule on Gonzalez's assertions that he has been improperly classified as an inadmissible alien, Gonzalez's allegation that he is a Mariel Cuban being held in excess of six months pending execution of his removal order to Cuba and without any foreseeable possibility of removal states a cognizable § 2241 habeas claim over which this Court may exercise jurisdiction.  Accordingly, in an Order issued simultaneously with this Report and Recommendation, I will direct that this claim be served on the respondent.

<u>Conclusion</u>

For the reasons stated herein, I recommend that all of the claims except the claim challenging Gonzalez's potentially indefinite pre=removal detention be dismissed.  Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979

15

F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).


                                  James R. Muirhead
                                  United States Magistrate Judge

Date:      February 18 , 2005

cc:        Geraldo Gonzales, *pro se*


16